IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **OCUSOFT, INC.,** § | | |
| **Plaintiff** § | | |
| § | | |
| v. § | **CASE NO. 4:24-CV-03757** | |
| § | | |
| **THE HILSINGER COMPANY** § | | |
| **PARENT, LLC D/B/A BRUDER** § | | |
| **HEALTHCARE** § | | |
| **Defendant** § | | |

# PLAINTIFF'S OBJECTIONS TO THE FINDINGS AND RECOMMENDATIONS OF THE MAGISTRATE & MOTION SEEKING JURISDICTIONAL DISCOVERY IN THE ALTERNATIVE

i

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ....................................................................................................... ii
**TABLE OF AUTHORITIES** ............................................................................................... iii
**I.     SUMMARY OF THE ARGUMENT** ............................................................................ 1
**II.    PROCEDURAL & HISTORICAL BACKGROUND FACTS** ........................................ 2
**III.   ARGUMENT AND AUTHORITY** ............................................................................. 4
   A.   **OCuSOFT Established an Uncontraverted Prima Facie Showing of Jurisdiction** ..... 4
   B.   **Alternatively, OCuSOFT has a Preliminary Showing of Jurisdiction Justifying Jurisdictional Discovery.** ................................................................................. 8
   C.   **Insufficiency of the Brent Jones Declaration** ................................................. 9
   D.   **In the Alternative, a Request for Jurisdictional Discovery** ............................ 13
**CONCLUSION AND PRAYER** .......................................................................................... 15
**CERTIFICATE OF SERVICE** ............................................................................................. 16

# TABLE OF AUTHORITIES

**CASES**

*Ainsworth v. Moffett Eng_g_Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013) ...................................... 10, 11
*Alpine View Co, v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). ........................................ 8
*Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987) ................................................ 10
*Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (Fed. Cir. 1994) ................. 9
*Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1361 (Fed. Cir. 2006). ........ 9
*Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990) ................................................................... 8
*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) 10
*Davis v. Raney Auto Co.*, 249 S.W. 878, 878 (Tex. Civ. App. – Texarkana 1923, no writ) .......... 15
*Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005) .............................. 11, 12
*Fish v. Tandy Corp.*, 948 S.W.2d 886, 897 (Tex. App.-Fort Worth 1997, writ denied) ................ 15
*Gundle Lining Constr. Corp. v. Adams Cnty, Asphalt Inc.*, 85 F.3d 201, 205 (5th Cir. 1996) ......... 9
*Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) ................... 9
*Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) ...................................... 8
*Kahn v. Imperial Airport, L.P.*, 308 S.W.3d 432, 438 (5th Cir., 2010) .......................................... 15
*Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000) ................................ 12
*Lahman v. Nationwide Provider Sols.*, No. 4:17-CV-00305, 2018 U.S. Dist. LEXIS 101757, 2018 WL 3035916, at *12 (E.D. Tex. June 19, 2018) ........................................................................ 8
*Litvinov v. Bowtech, Inc.*, 701 F. Supp. 3d 618, 623 (S.D. Tex. 2023) .................................... 11, 16
*Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) .................................... 9, 10
*Match Grp., LLC v. Bumble Trading, Inc.*, 2020 U.S. Dist. LEXIS 46656 (W.D. Tex., March 18, 2020) ............................................................................................................................................ 10
*McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). ................................................................. 9
*Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999) .......................................................... 8
*Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010) ............ 9
*Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003) ............................................. 9
*Shambaugh & Son, L.P. v. Steadfast Ins., Co.* 91 F.4th 364, 373 (5th Cir. 2024) .......................... 10
*Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir., 2003) ....................................... 12
*Yeti Coolers, LLC v. Mercatalyst, Inc.*, 2024 U.S. Dist. LEXIS 50151 (W.D. Tex., March 21, 2024) ............................................................................................................................................ 11

**STATUTES**

Federal Rule of Civil Procedure 12(b)(2) ........................................................................................ 8
Federal Rules of Evidence 602 ..................................................................................................... 15
Federal Rules of Evidence 701 ..................................................................................................... 15

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW** the Plaintiff, OCuSOFT, Inc.™, ("Plaintiff" or "OCuSOFT™") to file these Objections to the Proposed Findings and Recommendations of the Magistrate & Motion Seeking Jurisdictional Discovery in the Alternative regarding the Defendant, The Hilsinger Company Parent, LLC's ("Hilsinger" and/or "Defendant"), Motion to Dismiss Plaintiff's First Amended Petition for Lack of Personal Jurisdiction (herein referred to as "Motion") and would respectfully show the following:

## I.   SUMMARY OF THE ARGUMENT

1.   OCuSOFT has made a prima facie showing of jurisdiction and Hilsinger presented insufficient credible evidence controverting any facts in OCuSOFT's pleadings to contest Texas' jurisdiction. Hilsinger is relying on a misinterpretation of the law, specifically that a division created by the internal administration of Hilsinger can create a separate "entity" for the purpose of providing evidence to address jurisdictional pleadings.[1] The Second Declaration of Brent Jones attached to Hilsinger's Motion ("Declaration") admits to his lack of knowledge to testify with regard to the entirety of Hilsinger's actions and only to a limited division within Hilsinger.[2]

2.   Because of this, any and all of the facts upon which OCuSOFT bases its jurisdictional pleadings are not refuted by Mr. Jones's Declaration as that Declaration does not actually state whether or not Hilsinger is committing these acts upon which OCuSOFT basis its jurisdiction or not.  As such, OCuSOFT asks that this Court reject the findings and recommendations of the Magistrate and deny Hilsinger's Motion in its entirety.

3.   Alternatively, should this Court not deny Hilsinger's Motion, OCuSOFT has satisfied its preliminary showing of jurisdiction, including but not limited to presenting evidence of Hilsinger's

---

[1] Case 4:24-cv-03757, ECF. No.: 31-2, pg. 3, ¶6.
[2] Case 4:24-cv-03757, ECF. No.: 31-2, pg. 1, ¶2.

1

continuing violative acts despite the Declaration, sufficient to justify jurisdictional discovery and requests that this Court reject the recommendations and findings of the Magistrate and grant OCuSOFT the right to discovery before ruling on Hilsinger's Motion.

## II. PROCEDURAL & HISTORICAL BACKGROUND FACTS

4.  On October 3, 2024, OCuSOFT filed its Original Petition in the above styled cause of action. On December 4, 2024, Hilsinger filed its Motion to Dismiss for Lack of Personal Jurisdiction. In response, on December 23, 2024, OCuSOFT filed a Response to Hilsinger's Motion to Dismiss for Lack of Personal Jurisdiction along with its First Amended Petition amending and supplementing the factual basis upon which OCuSOFT was seeking jurisdiction over Hilsinger in Texas and rendering Hilsinger's Motion to Dismiss moot.

5.  In response to Plaintiff's First Amended Petition, Hilsinger filed another Motion to Dismiss OCuSOFT's First Amended Petition for Lack of Personal Jurisdiction. Accompanying said motion was the Second Declaration of Brent Jones ("Declaration"). Among the testimony provided by Brent Jones, he makes the following representations for and on behalf of Hilsinger, or at least one of Hilsinger's business lines:

> Since 2023, I have served as Global Head of Vision Care Solutions Division for Defendant The Hilsinger Company Parent, LLC d/b/a Bruder Healthcare in the above-captioned case. In addition, from 2022 to 2023, I served as Global Head of Dry Eye and General Manager for Bruder Healthcare. As such, I am generally familiar with operations and corporate structure of The Hilsinger Company Parent, LLC as it relates to its d/b/a Bruder Healthcare.[3]

"[Hilsinger] has at least two separate and district business units. One of these business units does business as 'Bruder Healthcare', the named entity in this present action."[4] This representation is clearly erroneous as Bruder Healthcare is not the named entity in this action, the Hilsinger

---

[3] Case 4:24-cv-03757, ECF. No.: 31-2, pg. 1, ¶2.
[4] Case 4:24-cv-03757, ECF. No.: 31-2, pg. 3, ¶6.

2

Company Parent, LLC is. Brent Jones, on behalf of Hilsinger also testifies, "for sake of clarity, The Hilsinger Company Parent, LLC has a second separate and distinct business unit that does business as "Hilco Vision."[5] Brent Jones goes on to say, "To the best of my knowledge, Bruder Healthcare does not intend to, among other actions, "conduct marketing or trade shows advertising Eyeleve MGD referencing or bearing the Retaine MGD name."[6]

6. In reliance on this extensive affidavit and the numerous representations and admissions from Brent Jones that Defendant would cease any and all acts violating OCuSOFT's trademark in Retaine MGD that formed the basis of its claims against Hilsinger, OCuSOFT filed its Response to Hilsinger's Motion to Dismiss stating that, "Given the fact that Defendant has elected to provide Plaintiff with its equitable remedies without further litigation and to cease the violation of Plaintiff's trademark in Retaine MGD and/or confuse the market as to the source of Retaine MGD and/or Eyeleve MGD, Plaintiff has no additional evidence granting this Court personal jurisdiction over Defendant."[7]

7. On or around February 20, 2025, it was discovered that Hilsinger's website, Bruderpro.com, began referencing a study that was conducted, purportedly on the Hilsinger product, Eyeleve MGD, that its "unique combination of ingredients ensures that patients experience relief from dry eye symptoms, improving their overall eye health and comfort. In addition, study participants experienced an immediate-onset transient improvement in tear film stability.[1]"[8] The superscript 1 links to a footnote on the website titled "Clin Ophthalmol. 2015; 9:235-243."[9] Upon clicking on this footnote, the viewer of the webpage is directed to a Clinical

---

[5] Case 4:24-cv-03757, ECF. No.: 31-2, pg. 3, ¶7.
[6] Case 4:24-cv-03757, ECF. No.: 31-2, pg. 7, ¶40.
[7] Case 4:24-cv-03757, ECF. No.: 34, pg. 6, ¶6.
[8] Exhibit A: BruderPro.com/bruder-healthcare-introduces-eyeleve-mgd-a-trusted-eye-drop-formula-under-a-new-brand/ (follow the url above and scroll until you reach the superscript 1 hyperlink).
[9] Exhibit A: BruderPro.com/bruder-healthcare-introduces-eyeleve-mgd-a-trusted-eye-drop-formula-under-a-new-brand/ (follow the url above and scroll until you reach the superscript 1 hyperlink and click or continue to the

Ophthalmology study titled, "An evaluation of Retaine™ ophthalmic emulsion in the management of tear film stability and ocular surface staining in patients diagnosed with dry eye."[10] ("Retaine Study")

8.      Despite all of the representations and admissions made by Brent Jones to the contrary, Hilsinger continues to utilize the Retaine MGD trademarks that belong to OCuSOFT in an attempt to confuse the market with regard to the source of Retaine MGD and/or Eyeleve MGD.

9.      This reference to and use of the Retaine Study was believed to be a direct violation of the representation by Hilsinger that, "To the best of [Brent Jones's] knowledge, Bruder Healthcare has no intention of conducting marketing or trade shows advertising Eyeleve MGD referencing or bearing the Retaine MGD name."[11]  It was at this point that the legal fallacy upon which Brent Jones's Declaration was based was discovered.  Hilsinger relies on the false legal premise that a department of a company is a separate entity for determining liability when referred to as a d/b/a in a suit, and that Brent Jones was not testifying with knowledge of Hilsinger as a whole.  The Retaine Study is posted on Hilsinger's website, bearing and/or referencing the Retaine MGD name, in an attempt to market Eyeleve MGD.  This use of Retaine MGD in marketing Eyeleve MGD is clearly an attempt to confuse the market as to the source of Retaine MGD and/or Eyeleve MGD and shows the insufficiency of the Declaration to controvert OCuSOFT's jurisdictional pleadings.

### III.     ARGUMENT AND AUTHORITY

#### A. OCuSOFT Established an Uncontraverted Prima Facie Showing of Jurisdiction

10.     Personal jurisdiction is a question of law reviewed de novo. *Mink v. AAAA Dev. LLC*, 190

---

bottom of the page for the footnote 1 hyperlink).
[10] Exhibit B: G. Ousler, III, D.K. Devries, P.M. Karpecki, J.B. Ciolino, *An evaluation of Retaine™ ophthalmic emulsion in the management of tear film stability and ocular surface staining in patients diagnosed with dry eye*, Clin Ophthol., Feb, 5, 2015, pmc.ncbi.nlm.nih.gov/articles/PMC4332255/.
[11] Case 4:24-cv-03757, ECF. No.: 31-2, pg. 7, ¶40.

F.3d 333, 335 (5th Cir. 1999). The Plaintiff bears the burden of establishing a district court's jurisdiction over a non-resident, but it need only make a prima facie case if the district court rules without an evidentiary hearing. *Johnston v. Multidata Sys. Int'l Corp.,* 523 F.3d 602, 609 (5th Cir. 2008). Proof by a preponderance of the evidence is not required. *Id*. Moreover, on a motion to dismiss for lack of personal jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a prima facie case for personal jurisdiction exists. *Id*.

11. Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. "After a non-resident defendant files a motion to dismiss for lack of personal jurisdiction, it is the plaintiff's burden to establish that *in personam* jurisdiction exists." *Lahman v. Nationwide Provider Sols.*, No. 4:17-CV-00305, 2018 U.S. Dist. LEXIS 101757, 2018 WL 3035916, at *12 (E.D. Tex. June 19, 2018)(citing *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990).

12. "To satisfy that burden, the party seeking to invoke the court's jurisdiction must 'present sufficient facts as to make out only a prima facie case supporting jurisdiction, 'if a court rules on a motion without an evidentiary hearing." *Id*. (quoting *Alpine View Co, v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). "When considering the motion to dismiss, '[a]llegations in plaintiff's complaint are taken as true except to the extent that they are contradicted by defendant's affidavits.'" *Id*.

13. A federal court may satisfy the constitutional requirements for specific personal jurisdiction by a showing that the Defendant has "minimum contacts" with the forum state such that imposing a judgment would not "offend traditional notions of fair play and substantial justice". *Luv N' Care,*

*Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). Because the Texas long-arm statute has been interpreted as extending to the limit of due process, these two inquiries are the same for district courts in Texas. *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003). The Supreme Cout has articulated a two-pronged test to determine whether the requirements of due process are satisfied: 1) the nonresident must have "minimum contacts" with the forum state, and 2) subjecting the nonresident to jurisdiction must be consistent with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945); *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1361 (Fed. Cir. 2006).

14.     A court may exercise specific jurisdiction when the "non-resident defendant's contacts with the forum state arise from, or are directly related to, the [causes] of action." *Gundle Lining Constr. Corp. v. Adams Cnty, Asphalt Inc.*, 85 F.3d 201, 205 (5th Cir. 1996).

15.     "The Federal Circuit applies a three-prong test to determine if specific jurisdiction exists: 1) whether the defendant purposefully directed activities at residents of the forum; 2) whether the claim arises out of or relates to those activities; and 3) whether assertion of personal jurisdiction is reasonable and fair." *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010). If the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). The Federal Circuit has counseled, however, that the exercise of jurisdiction is unreasonable only in "the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (Fed. Cir. 1994)

(citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)).

16. A contract with an out-of-state party alone, although relevant, does not automatically establish sufficient minimum contacts. *Burger King*, 471 U.S. at 478. A "highly realistic" approach is called for, recognizing that a contract is ordinarily but an intermediate step serving to tie up prior negotiations and future consequences which themselves are the real object of the business transaction. *Id*. "[W]hen specific personal jurisdiction is grounded on contractual relations, lower courts must evaluate 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing to determine 'whether the defendant purposefully established minimum contacts within the forum.'" *Shambaugh & Son, L.P. v. Steadfast Ins., Co*. 91 F.4th 364, 373 (5th Cir. 2024) (citing *Burger King*, 471 U.S. at 479.)

17. Where a defendant knowingly benefits from the availability of a particular state's market for its products, it is only fitting that the defendant be amenable to suit in that state. *Luv N' Care*, 438 F.3d at 470.

> In cases involving a product sold or manufactured by a foreign defendant, this [Fifth] Circuit has consistently followed a 'stream-of-commerce' approach to personal jurisdiction, under which the minimum contacts requirement is met so long as the court 'finds that the defendant delivered the product in to the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state.

*Ainsworth v. Moffett Eng_g_Ltd*., 716 F.3d 174, 177 (5th Cir. 2013), quoting *Bearry v. Beech Aircraft Corp*., 818 F.2d 370, 374 (5th Cir. 1987). The 5th Circuit courts have utilized the stream of commerce theory in the context of intellectual property. See *Luv N' Care,* 438 F.3d at 469-472; *Match Grp., LLC v. Bumble Trading, Inc.,* 2020 U.S. Dist. LEXIS 46656 (W.D. Tex., March 18, 2020) (holding that the source code that allegedly infringed on Plaintiff's patent and trademark rights passed through established distribution channels through the jurisdiction as if it were a

7

product to allow the court to properly exercise personal jurisdiction); *Yeti Coolers, LLC v. Mercatalyst, Inc.,* 2024 U.S. Dist. LEXIS 50151 (W.D. Tex., March 21, 2024) (holding that the defendant put infringing products in the stream of commerce in Texas and because the infringing sales in Texas were foreseeable, the exercise of personal jurisdiction is proper).

18. In *Ainsworth v. Moffett Eng_g_Ltd.*, the 5th Circuit Court found Moffett was subject to personal jurisdiction under a "stream-of-commerce" theory based on the:

> "exclusive sales and distribution agreement between Moffett, the manufacturer of the forklift, and Cargotec, its seller to Mr. Ainsworth's employer. Pursuant to that agreement, Cargotec is the exclusive marketer and distributor of Moffett's forklifts throughout the United States. Cargotec is Moffett's only customer in the United States; Moffett does not sell forklifts directly to other customers in the United States."

*Ainsworth*, 716 F.3d at 177. The district court reasoned, and the 5th Circuit affirmed, that Moffett was "subject to personal jurisdiction in Mississippi under the stream-of-commerce approach because '(1) it had entered into a sales and distribution agreement which specifically defined Cargotec's sales territory as the entire United States, (2) it was aware that Cargotec marketed its product through the entire United States, and (3) it made no attempt to limit the scope of Cargotec's marketing efforts." *Id*.

### B. Alternatively, OCuSOFT has a Preliminary Showing of Jurisdiction Justifying Jurisdictional Discovery.

19. A court may grant jurisdictional discovery when the Plaintiff makes a "preliminary showing of jurisdiction." *Litvinov v. Bowtech, Inc.*, 701 F. Supp. 3d 618, 623 (S.D. Tex. 2023). A preliminary showing is less than a prima facie showing. *Id*. A preliminary showing does not require proof that personal jurisdiction exists, but "factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005). In other words, Plaintiff must state what facts discovery is

expected to uncover and how those facts would support personal jurisdiction. *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000). "If a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts … the plaintiff's right to conduct jurisdictional discovery should be sustained." *Fielding*, 415 F.3d at 429 (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir., 2003)).

### C. Insufficiency of the Brent Jones Declaration

20. Here, Plaintiff satisfied its evidentiary burden by pleading sufficient facts, if taken as true, would establish jurisdiction:

> 1) negotiating, amending, and/or executing contracts with third-parties to continuously transport and deliver Eyeleve MGD to Texas for the distribution and sale of Eyeleve MGD to residents of Texas; 2) negotiating, amending, and/or executing contracts with retailers, doctors' offices, and/or other stores, pharmacies, retailers, and/or wholesalers to continuously distribute, market, stock, and sell Eyeleve MGD in Texas to Texas residents; 3) conducting marketing and tradeshows in Texas and/or to residents of Texas advertising Eyeleve MGD; and/or 4) reaching out to doctors and other residents of Texas to promote, use, sell, and/or market Eyeleve MGD, all done in violation of Plaintiff's trademark in Retaine MGD and/or to confuse the market with regard to the origin of Retaine MGD and/or Eyeleve MGD.[12]

and

> 1) travel to the state of Texas, either directly or indirectly, to attend trades shows, conferences, meetings, industry shows, etc. to market, promote, and sell Eyeleve MGD in violation of Plaintiff's trademark in Retaine MGD and/or to confuse the market with regard to the origin of Retaine MGD and/or Eyeleve MGD; 2) negotiate, draft, amend, and/or execute agreements, including but not limited to distribution agreements, with persons either residents or non-residents of Texas to market, transport, distribute, promote, and/or sell Eyeleve MGD in Texas in violation of Plaintiff's trademark in Retaine MGD and/or to confuse the market with regard to the origin of Retaine MGD and/or Eyeleve MGD; 3) communicate with, reach out to, negotiate with, and/or execute agreements with persons, including but not limited to: doctors' offices, wholesalers, retailers, pharmacies, storefronts, grocery stores, online market places, etc., both in Texas and located outside of Texas, to transport, stock, market, distribute, promote, and/or sell Eyeleve MGD in Texas in violation of Plaintiff's trademark in Retaine MGD and/or to confuse the market with regard to the origin of Retaine MGD and/or Eyeleve

---

[12] Case 4:24-cv-03757, ECF. No.: 19, pg. 2, ¶5.

MGD.[13]

Therefore, in order for these facts to not be taken as true, Defendant Hilsinger must present affidavit contradicting these facts. Unfortunately for Hilsinger, the Declaration is insufficient to contradict OCuSOFT's jurisdictional pleadings.

21.   First, the Declaration does not establish any evidence contradicting the facts plead in Plaintiff's First Amended Petition because the declarant, Brent Jones only discusses a department of Hilsinger, "Bruder Healthcare" and is incapable of testifying on behalf of the Defendant Hilsinger as a whole as Brent Jones admits that he lacks knowledge with regard to the operations of other departments of Hilsinger. Therefore, Hilsinger never actually contesting any facts plead in Plaintiff's First Amended Petition.

22.   For instance, Brent Jones admits to the limited scope of his knowledge as, "[he is] generally familiar with the operations and corporate structure of The Hilsinger Company Parent, LLC as it relates to its d/b/a Bruder Healthcare"[14] and that Hilsinger "has at least two separate and distinct business units. One of the business units does business as "Bruder Healthcare" and the other "Hilco Vision."[15]

23.   Although, Brent Jones testifies that, "On information and belief, the separate business unit Hilco Vision may have approximately two remote employees who live in the State of Texas and telecommute from their optical retail sales work with Hilco Vision. These remote employees do not work on or for Bruder Healthcare, nor do they work on or for Bruder product lines."[16] Mr. Jones has already testified that his knowledge is limited to those activities of Hilsinger's "Bruder Healthcare" division and cannot testify with knowledge regarding "Hilco Vision" or any

---

[13] Case 4:24-cv-03757, ECF. No.: 19, pg. 9-10, ¶16.
[14] Case 4:24-cv-03757, ECF. No.: 31-2, pg. 1, ¶2.
[15] Case 4:24-cv-03757, ECF. No.: 31-2, pg. 2, ¶6; Id. at pg. 3, ¶7.
[16] Case 4:24-cv-03757, ECF. No.: 31-2, pg. 2, ¶6; Id. at pg. 3, ¶18.

10

other division or department of Hilsinger.[17] For instance, in the Declaration, Brent Jones testifies, "To the best of my knowledge, Bruder Healthcare has no intention of negotiating, amending, or executing contracts with third-parties for the distribution and sale of Eyeleve MGD referencing or bearing the Retaine MGD name."[18] Mr. Jones fails to testify that Hilsinger and/or Hilco Vision has no intention of negotiating, amending, or executing contracts with third-parties for the distribution and sale of Eyeleve MGD in Texas referencing or bearing the Retaine MGD name. This being the case, Hilsinger has failed to adequately address OCuSOFT's jurisdictional pleadings that, Hilsinger is "negotiating, amending, and/or executing contracts with third-parties to continuously transport and deliver Eyeleve MGD to Texas for the distribution and sale of Eyeleve MGD to residents of Texas…in violation of Plaintiff's trademark in Retaine MGD and/or to confuse the market with regard to the origin of Retaine MGD and/or Eyeleve MGD."[19]

24. Hilsinger is relying on an erroneous interpretation of the law in an attempt to bolster the efficacy of the Declaration; specifically, that different departments of a company are considered different "entities" for the purpose of litigation and/or for providing a corporate representative to testify on behalf of the company.[20]

25. There is no law that permits a corporation to avoid liability for its violative acts by merely committing those violative acts in one compartmentalized division of the company and treating the division committing such acts as a separate entity. Furthermore, Hilsinger presented no governing law establishing that a d/b/a is considered a separate legal entity from the entity doing business as it and is a party that can be liability in place of the entity or person acting in its name.

---

[17] See Case 4:24-cv-03757, ECF. No.: 31-2, pg. 1, ¶2.
[18] Case 4:24-cv-03757, ECF. No.: 31-2, pg. 2, ¶6; Id. at pg. 6, ¶36.
[19] Case 4:24-cv-03757, ECF. No.: 19, pg. 2, ¶5.
[20] See Case 4:24-cv-03757, ECF. No.: 31-2, pg. 2, ¶6; Id. at pg. 2, ¶6.

The reason for this is due to the fact that no such governing law exists that could be identified by OCuSOFT.  See *Kahn v. Imperial Airport, L.P.*, 308 S.W.3d 432, 438 (5th Cir., 2010); *see also*, *Davis v. Raney Auto Co.*, 249 S.W. 878, 878 (Tex. Civ. App. – Texarkana 1923, no writ); See also, *Fish v. Tandy Corp.*, 948 S.W.2d 886, 897 (Tex. App.-Fort Worth 1997, writ denied).

26.     Given the foregoing, OCuSOFT hereby objects to the Declaration of Brent Jones's under Federal Rules of Evidence 602, for lack of personal knowledge, Federal Rules of Evidence 701, as opinion testimony by a lay witness, and for speculation and that such Declaration is insufficient to contradict or controvert OCuSOFT's jurisdictional basis as Mr. Jones lacks the knowledge or foundation to provide testimony as to the activities taken or not taken by Hilsinger as a whole or any specific department but for "Bruder Healthcare".

27.     Because Brent Jones has admitted in his own Declaration that he can only testify with knowledge with regard to the division of Hilsinger, "Bruder Healthcare," all of his testimony is useless as any other division of Hilsinger could be committing those same violative acts OCuSOFT alleged in its First Amended Petition giving rise to Texas' jurisdiction, including but not limited to "Hilco Vision," which has two Texas resident employees, if Mr. Jones is to be believed, that may be reaching out to Texas companies, residents, doctors, etc., to market and/or sell Eyeleve MGD in violation of Plaintiff's trademark in Retaine MGD and/or to confuse the market with regard to the origin of Retaine MGD and/or Eyeleve MGD.[21]  Mr. Jones's Declaration fails to address the numerous other divisions of Hilsinger, known or unknown by Mr. Jones, that could be committing the same violative acts upon which Plaintiff basis its jurisdictional pleadings.  Of note, Hilsinger failed to obtain declarations or affidavits from any other division or department heads of Hilsinger or any head of Hilsinger, as a whole, contradicting OCuSOFT's jurisdictional pleadings.  As such,

---

[21] Case 4:24-cv-03757, ECF. No.: 31-2, pg. 1, ¶2; Id. at pg. 3, ¶18.

Brent Jones's Declaration amounts to insufficient evidence from Hilsinger to contradict the jurisdictional pleadings of OCuSOFT given Brent Jones's limited foundation and knowledge. As such, Hilsinger has failed to submit an affidavit contradicting OCuSOFT's jurisdictional pleadings, the uncontroverted jurisdictional pleadings of OCuSOFT should be taken as true, and Hilsinger's Motion to Dismiss should be denied in its entirety.

### D. In the Alternative, a Request for Jurisdictional Discovery

28. OCuSOFT incorporates all argument laid out above herein. In the alternative, if the Court feels Brent Jones's Declaration is sufficient to controvert OCuSOFT's jurisdictional pleadings, OCuSOFT has made a preliminary showing of jurisdiction and should be granted jurisdictional discovery. See *Litvinov v. Bowtech, Inc.*, 701 F. Supp. 3d 618, 623 (S.D. Tex. 2023). Given the weakness in the efficacy of the Declaration, the factual basis upon which OCuSOFT makes its jurisdictional argument remains the same as those asserted in the First Amended Petition, that Hilsinger is:

> 1) negotiating, amending, and/or executing contracts with third-parties to continuously transport and deliver Eyeleve MGD to Texas for the distribution and sale of Eyeleve MGD to residents of Texas; 2) negotiating, amending, and/or executing contracts with retailers, doctors' offices, and/or other stores, pharmacies, retailers, and/or wholesalers to continuously distribute, market, stock, and sell Eyeleve MGD in Texas to Texas residents; 3) conducting marketing and tradeshows in Texas and/or to residents of Texas advertising Eyeleve MGD; and/or 4) reaching out to doctors and other residents of Texas to promote, use, sell, and/or market Eyeleve MGD, all done in violation of Plaintiff's trademark in Retaine MGD and/or to confuse the market with regard to the origin of Retaine MGD and/or Eyeleve MGD.[22]

and

> 1) travel to the state of Texas, either directly or indirectly, to attend trades shows, conferences, meetings, industry shows, etc. to market, promote, and sell Eyeleve MGD in violation of Plaintiff's trademark in Retaine MGD and/or to confuse the market with regard to the origin of Retaine MGD and/or Eyeleve MGD; 2) negotiate, draft, amend, and/or execute agreements, including but not limited to

---

[22] Case 4:24-cv-03757, ECF. No.: 19, pg. 2, ¶5.

distribution agreements, with persons either residents or non-residents of Texas to market, transport, distribute, promote, and/or sell Eyeleve MGD in Texas in violation of Plaintiff's trademark in Retaine MGD and/or to confuse the market with regard to the origin of Retaine MGD and/or Eyeleve MGD; 3) communicate with, reach out to, negotiate with, and/or execute agreements with persons, including but not limited to: doctors' offices, wholesalers, retailers, pharmacies, storefronts, grocery stores, online market places, etc., both in Texas and located outside of Texas, to transport, stock, market, distribute, promote, and/or sell Eyeleve MGD in Texas in violation of Plaintiff's trademark in Retaine MGD and/or to confuse the market with regard to the origin of Retaine MGD and/or Eyeleve MGD.[23]

29. Given the fact that Brent Jones admitted that he cannot testify with knowledge with regard to the activities of any other department of Hilsinger, none of the factual basis upon which OCuSOFT relies are addressed by the Declaration as Mr. Jones all but admits that Hilco Vision (or any other division of Hilsinger which Brent Jones has already admitted he would have no knowledge of) could be committing all of the jurisdictional actions relied on by OCuSOFT in its pleadings.[24]

30. If OCuSOFT were to perform discovery, it would likely find, but not be limited to: 1) numerous contracts executed between Hilsinger and third-parties to transport, market, sell, distribute, and/or deliver Eyeleve MGD into Texas bearing and/or using the Retaine MGD trademark; 2) contracts executed between Hilsinger and third-parties to stock, market, and/or sell Eyeleve MGD in Texas bearing the Retaine MGD name; 3) written marketing for Eyeleve MGD to be directed to Texas residents using the Retaine MGD name; 4) reaching out into Texas to speak with Texas doctors and residents to discuss, sell, and or market the Eyeleve MGD product using the Retaine MGD name; 5) employment of individuals in Texas to market, promote, support, advertise, stock, and sell Eyeleve MGD using the Retaine MGD name; 6) numerous units of Eyeleve MGD existing in Texas and to be sold in Texas bearing the Retaine MGD name, just to

---

[23] Case 4:24-cv-03757, ECF. No.: 19, pg. 9-10, ¶16.
[24] *See generally* Case 4:24-cv-03757, ECF. No.:31-2, pg. 2-3.

name a few. Given the foregoing, OCuSOFT has presented sufficient factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts by Hilsinger in Texas and as such, OCuSOFT's right to conduct jurisdictional discovery should be sustained."

## CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff, OCuSOFT Inc., respectfully requests that this Court reject the Proposed Findings and Recommendations of the Magistrate for the reasons stated herein and deny the Defendant's, The Hilsinger Company Parent, LLC's, Motion. In the alternative, Plaintiff respectfully requests that this Court reject the Proposed Findings and Recommendations of the Magistrate and grant the Plaintiff leave to conduct limited jurisdictional discovery before ruling on Hilsinger Company Parent, LLC's Motion to Dismiss. Plaintiff further requests any and all further relief to which they are justly entitled to receive.

> Respectfully submitted,
> The Spencer Law Firm
>
> _____
> Loren M. King, TBN 24078789
> Attorney-in-Charge
> FBN#: 2441702
> E-mail: lking@spencer-law.com
> Ashley M. Spencer, TBN 24079394
> FBN#: 1348733
> E-mail: Ashleyspencer@spencer-law.com
> 4635 Southwest Freeway, Suite 900
> Houston, Texas 77027
> Telephone: (713) 961-7770
> Facsimile: (713) 961-5336
> ***Attorneys for Plaintiff***

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing instrument and proposed Order will be accomplished through the notice of electronic filing in accordance with the Federal Rules of Civil Procedure on this 4th day of March, 2025 to the following:

| | |
|---|---|
| Cynthia J. Lee | *Via Email: c.lee@pkhip.com* |
| Andrea P. Nguyen | *Via Email: a.nguyen@pkhip.com* |
| Perilla Knox & Hildebrandt LLP | |
| 5871 Glenridge Drive, Suite 350 | |
| Atlanta, GA 30328 | |
| | |
| Kyrie K. Cameron | *Via Email: KCameron@pattersonsheridan.com* |
| Patterson + Sheridan LLP | |
| 24 Greenway Plaza, Suite 1600 | |
| Houston, TX 77046 | |

***Attorneys for The Hilsinger Company Parent, LLC d/b/a Bruder Healthcare***

_____
Loren M. King, IV